RAY NUTTING
8161 Happy Valley Road
Somerset, CA 95684
Home Phone (530) 644-1728
Cell Phone (530) 306-9942
raynutting@hughes.net



# FILED

JUN 0 6 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

2: 1 6 - CV - 1 2 3 5 GEB CKD PS

| | |
|---|---|
| RAY NUTTING, an individual: | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, AND THE FIFTH: EIGHTH: FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, CALIFORNIA STATE CONSTITUTION: AND THE BILL OF RIGHTS** |
| EL DORADO COUNTY: Ron Mikulaco: Brian Veerkamp: Ron Briggs: Norma Santiango: Ed Knapp: Pamela Knorr:Does 1-25 inclusive: | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

## I

## NATURE OF ACTION

1.     This is an action of law to redress the deprivation of civil rights under the color of state law, statute, custom or usage of a right, privilege, and immunity secured to Ray Nutting, (hereinafter plaintiffs, *in Proper Persona,*) by the Fifth, Eight, Fourteenth amendments of the Constitution of the United States of America ( 42 U.S.C. Section 1983),  and arising under the laws and statutes of the State of California.   This action seeks to redress for violations of, the Civil Rights Act of 1871, 42 U.S.C § 1983, and the United States Constitution.

2.     The violations herein alleged, were caused by Defendants action outside the scope of their duty, and under the color of state law, enforcing their practices, policies, ordinances,

1  resolutions, customs and usage of regulations adopted, employed and ratified by their
2  supervisors.

3    3.  This action evolves from plaintiff's removal from his office after being duly elected
4  as El Dorado County Supervisor, by the people of El Dorado County.  The removal action
5  proceeding was conducted through exparte communication with the Superior Court, without
6  notice, opportunity, or a hearing, or right to appeal to plaintiff.  Plaintiff was denied the
7  enjoyment of his office as an El Dorado County Supervisor. In essence Plaintiff was denied all
8  due process, and the right to serve in his office as El Dorado County Supervisor.

9  II

10 **JURISDICTION**

11   4.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28
12 U.S.C. § 1343 in that this is an action brought under 42 U.S.C. § 1983 seeking compensation for
13 violations of Plaintiff's Federal Constitutional rights.

14   5.  The jurisdiction of the Court is invoked under 28 U.S.C. Sections 1331 and 1343 (a)
15 (3), (4),  this being an action authorized by law to redress the deprivation under color of state
16 law, statute, custom and usage of a right, privilege, and immunity secured to plaintiff by the
17 Fifth, Eight, Fourteenth, amendments of the Constitution of the United States of America ( 42
18 U.S.C. Section 1983), and arising under the laws, statutes and Constitution of the State of
19 California.  All of the actions by defendants and damages have been to the detriment of Plaintiff
20 and have occurred within the venue and jurisdiction of this Honorable Court.

21   6.  Venue is proper and lies within the Eastern Division of the United States District
22 Court for the District of California pursuant to 28 U.S.C. § 1391(a)(1) and 28 U.S.C. § 1391(b)
23 (1) & (2) because one or more of the Defendants is a political subdivision of the State of
24 California, and because the underlying acts, omissions, events, injuries and related facts upon
25 which the present action is based occurred in the County of El Dorado, California.

26 II

27 **STATEMENT OF CASE**

28   7.  Plaintiff is the decedent of  May and Will Bundy whom traveled from Pennsylvania to

Page 2
COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871,  42 U.S.C. § 1983

1  homestead in  Happy Valley, located in El Dorado County California in 1907.  Plaintiff was born

2  in 1960 as  the 5th of 6 children of Thomas and Matilda Nutting.   Plaintiff grew up spending

3   his summers, weekends and vacations at the homestead.  Plaintiff graduated from high school in

4  1978. Plaintiff  was asked to take over the management of the ranch. Shortly thereafter plaintiff

5  moved to the homestead. Plaintiff and his older brother, Thomas C. Nutting, bought out their brother

6  and sisters  interests in the homestead. The ranch,  was split into two equal 320 acre parcels in 1991.

7        8.   In 1989 plaintiff earned a Bachelor's of Arts degree in history/criminal justice from

8  California State University Sacramento. In 1989 Plaintiff received a California Teaching Credential

9  from Chapman University.  Plaintiff taught school for a couple of years while studying local, state,

10  and national politics.

11        9.   In 1992 plaintiff ran for the El Dorado County Board of Supervisors and was elected.

12  The Cleveland Fire (in El Dorado County) started burning during the campaign which became

13  plaintiff's District.

14     About twenty two thousand acres burned, in that fire, homes were destroyed, and two pilots died

15  in a bomber plane.    The number one issue in El Dorado County then, as it is now, is catastrophic

16  wildfire.

17        10.   On or about 1993 plaintiff and his brother Tom hired a registered professional forester,

18  Mark Steward to write a document called the Non-Industrial Timber Management Plan "NTMP",

19  which is still in place today.

20        11   During plaintiff's first term 1993-1996 plaintiff worked to protect resources and to

21  promote fire safety.  As a first term County Supervisor plaintiff promoted fire awareness and good

22  forest management.

23        12. In 1996 plaintiff was re-elected to the  El Dorado County Board of Supervisors and

24  became one of the leaders in California, promoting better forest management. Plaintiff's belief that

25  managing of the land includes logging, re-seeding and clearing of underbrush to protect against fire,

26  was widely accepted by the people of El Dorado County.

27        13.  In 2000, plaintiff was elected Chairman of the 29 County Regional Council of Rural

28  Counties. Plaintiff  traveled to Washington D.C.  and the State Capitol to work with national and

1   state agencies to find ways of stopping these catastrophic fires.

2       14.   Plaintiff's second term ended January of 2001.  Plaintiff returned to his family

3   homestead, (hereinafter  "Ranch"), and focused on his family.  By this time the ranch needed

4   management in order to reduce the ever present fire danger.

5       15.  After Plaintiff's term was completed as an El Dorado County Supervisor, he followed

6   his forester's advice, and applied for a grant.  The cost share grant program known as California

7   Forest Improvement Project (hereinafter CFIP) was for brushing, understory thinning, and the re-

8   planting of seedlings.  Plaintiff was out of office and the grant was outside of the purview of the El

9   Dorado County Board of Supervisors.

10       16.  In 2004 plaintiff again ran for the El Dorado County Board of Supervisors and lost that

11   campaign by 136 votes.

12       17.  In 2007 plaintiff decided to utilize another grant and it was completed by June of 2009.

13   **EVENTS LEADING TO REMOVAL**

14       18.  Plaintiff was re-elected to the El Dorado County Board in November of 2008 for his

15   third term as an El Dorado County Board Supervisor.  Plaintiff term started January 2009.

16       19.  As former County Supervisor in 2004, plaintiff was ask to support Vern Pierson

17   repeatedly for his endorsement for the California State Senate race in Senate District 1.  Plaintiff

18   declined and made it clear that he felt Assemblyman Dave Cox was a much better candidate.  Pierson

19   raised about $6,000 and failed to secure the required 20 nomination signatures.

20       20.  After the Vern Pierson, senate race was over, in 2006 Pierson again approached plaintiff

21   to support him this time for El Dorado County District Attorney race.

22       Plaintiff was endorsing incumbent Gary Lacy, and again decline to lend any support to Vern

23   Pierson.

24       21.  Pierson again called asking plaintiff for his support, each time he declined.    The race

25   was extremely heated and a lot of plaintiff's friends were supporting different people so he decided

26   to become neutral.  Plaintiff's relationship with Vern Pierson, became very strained, because he

27   would not endorse Vern Pierson.

28       22.  After Vern Pierson won the District Attorney election 2006, plaintiff believed he started

Page 4
COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

1   to use his El Dorado County DA office to go after his political enemies.  Examples:

2       a.  Congressman Tom McClintock,
        b.  Assemblyman Rico Oller,
3       c.  El Dorado County Judge Stracener,
        d.  Candidate Dillan Sullivan who was running for El Dorado County Judge.
4       E.  El Dorado County Sheriff John D'Agostini in 2010.

5       23.  The 2010 El Dorado County Sheriffs' election was a huge political battle between John

6   D'Agostini and Greg Thierkldson.  Both John D'Agostini and plaintiff shared the same campaign

7   manager, Dan Dellinger.  The battle really heated up when the Thierkldson campaign, sent out a

8   mailer accusing John D'Agostini catering to the Hell's Angels.  Plaintiff believed that mailer was

9   so ridiculous that the voters saw through it and John D'Agostini was elected as El Dorado County's

10  next Sheriff.

11      24.  District Attorney Vern Pierson had the Civil Grand Jury investigate both plaintiff and

12  Dan Dellinger starting in 2011.  Plaintiff was call to be examined before the 2011 Civil Grand Jury.

13      Advising the Grand Jury was Deputy District Attorney James Clinchard.  He asked plaintiff

14  questions about his involvement with child protective cases, and about his involvement with the Big

15  Cut Mine issue.  Plaintiff was not charged with any violation of law.  Plaintiff believed this was just

16  a "witch hunt" because plaintiff was just doing his job listening to his constituents complaints about

17  how they were treated by El Dorado County agencies.

18      25.  Plaintiff believed he was then investigated by the Grand Jury because of his rental home

19  and alleged Section 8 housing payments (which plaintiff never received) and a possible conflict.

20      Plaintiff informed the County that he had advertised his rental home located in Grizzly Flats

21  for rent in the local paper.  A woman named Jenivor, responded to the add and contacted plaintiff

22  and asked if he would accept federally funded Section 8 housing vouchers.

23      26.  Plaintiff explained to the potential renter he thought there may be a conflict of interest

24  because he  sits on the Housing Authority Board, and that he would consul Staff.  Jenivor asked if

25  plaintiff was discriminating against her.  Plaintiff said no and he would ask Staff if he had a conflict

26  of interest.

27      27.  After consulting with Staff, and the Washington D.C. Office plaintiff asked if he recuse

28  himself would there still be a conflict.  The Washington D.C. Office stated: " yes, and that plaintiff

1  would have to resign from the El Dorado County Board of Supervisors if he accepted the section 8

2  housing vouchers".

3         28.   No charges were brought by the District Attorney and the matter was dismissed.

4         29.   Plaintiff believed the District Attorney Vern Pierson was frustrated because there was

5  no conflict.   Pierson sends information to the press, and the individual El Dorado County

6  Supervisors, stating, that plaintiff was desperate for money (rents) and trying to use his influence to

7  accept section 8 housing vouchers.

8         30.   Ken Steers, a local business man, started getting involved in county politics

9  approximately 2004.  Plaintiff was invited to his home in Cameron Parks Estates.  Ken Steers

10  supported plaintiff's campaign. Ken Steer's lobbied plaintiff to support Vern Pierson for El Dorado

11  County District Attorney.

12         31.   Plaintiff stayed neutral in that race.  In 2008 both Ken Steers and Vern Pierson lobbied

13  plaintiff to support Doug Osi for the United States Congressional race.  Plaintiff declined.

14         32.   Ken Steers showed plaintiff the "hit piece" that he stated  was going to mailed out

15  against Sheriff candidate D'Agostini.  Ken Steers informed plaintiff that he needed to abandon

16  D'Agostini and support Greg Tierklson.  Plaintiff refused.

17         33.   Thierkldson campaign mailed out the "hit piece" to the voters of El Dorado County.

18  Plaintiff believes the  "hit piece" was so radical and so ridiculous that the voters rejected it and

19  D'Agostini became Eldorado County's new Sheriff. Ken Steers, became the new President of the

20  El Dorado County Republican Central Committee in 2009, and after his candidate Greg Tierklson

21  lost the election to Sheriff John D'Agostini, Ken Steers resigned.

22         34.   Two other Central Committee members resigned  along with Ken Steer's, they were

23  Jerold Sirocco and Brandon Kashia. Jerold Sirocco became Ken Steers' Chief Financial Officer.

24  Later Jerold Sirocco became Vern Pierson's campaign treasurer.

25         35.   Jerold Sirocco in 2012, requested a Public Record Act (PRA) from El Dorado County,

26  to have plaintiff's computer and phones searched for illegal campaign activity. After the PRA was

27  produced "No illegal campaign activity was found".

28         36. Ken Steers next move was to become a member of the 2013, Civil Grand Jury.

1   Plaintiff was called to appear and testify to the Grand Jury. Plaintiff informed the Grand Jury
2   of Ken Steers political involvement, and that the group needed to be aware of his history. Later that
3   same year Plaintiff returned to a sub-committee to answer questions about county processes.

4   Ken Steers is on the record criticizing and demeaning both plaintiff and Dan Dellinger, from
5   after 2010 Sheriff race to the present. Plaintiff believes Ken Steers verbal criticism is in retaliation
6   for plaintiff's failure to support Ken Steers political allies.

7   37. Ed Knapp, was the Deputy Assistant County Council for El Dorado County between
8   1993 to 2012. He was appointed Department Head and County Council in 2012 and retired in
9   October 2014. Plaintiff worked with Knapp on hundreds of issues. Early on Plaintiff and Ed Knapp
10  had a good professional relationship. However, strange events began to unfold after plaintiff won
11  the 2008 election starting January 6th, 2009 term.

12  38. On or about 2010, plaintiff received phone calls from very upset parents regarding their
13  children, that had been taken away by Child Protective Services. Plaintiff made phone calls to key
14  staff and was briefed as to what was going on. Knapp informed plaintiff that he didn't have the right
15  to ask questions about cases that includes children. Plaintiff informed Knapp, that he was just doing
16  his job and that he had not violated any laws.

17  39. As a result, the District Attorney investigated plaintiff. Once again plaintiff was called
18  to address the Civil Grand Jury. The Big Cut Mine issue was starting to unfold and there was a huge
19  debate as to whether the mine was vested a pre-existing mine or new mine. Knapp, would say to
20  plaintiff that:

21  "it is not a mine anymore".

22  Plaintiff disagreed with Knapp's conclusion about the mine. Plaintiff knew the mine was a
23  "patented mine" from the late 1800's and federally patented mining rights could not be taken away
24  by a county practice, without a hearing.

25  40. The County law enforcement showed up at Big Cut Mine, and pulled their guns on Rick
26  Churches minor children at their home, which neither the children nor their home were a part of Big
27  Cut mine investigation or court action. Rick Churches who was not at home called plaintiff.
28  Plaintiff waited for the enforcement staff out by the county road.

1    After words, Knapp approached plaintiff and said he was way out of line, and the District Attorney

2    Vern Pierson's office is investigating the issue. Once again plaintiff was under investigation.

3        41. Complaints were coming in from both the El Dorado county staff and private sector,

4    Rick Churches filed a complaint with the sheriffs office for the manner in which his minor children

5    were treated. Knapp down played all the complaints. At that time plaintiff's relationship was

6    extremely strained with El Dorado County District Attorney Vern Pierson and Ed Knapp.

7        42. On or about June 12, 2012, agenda item # 3, a motion was made and passed 5to 0, by

8    the El Dorado County Board of Supervisors to research all monies coming into the county for forest

9    fuels reduction programs.

10       43. All of the District Attorney's attempts to bring civil charges had failed, and now a new

11   investigation with charges, began to unfolded against plaintiff. Knapp, stated many times he is not

12   involve with plaintiffs investigation and cannot get involve. Plaintiff later learned Knapp, was very

13   involved and serving the District Attorney.

14       44. After plaintiff was indicted by the criminal Grand Jury, May 2013 Knapp advised plaintiff

15   not come to work. Plaintiff refused to take that advice, knowing he had not done anything wrong.

16   Knapp claimed he researched the laws and claimed plaintiff was not able to vote as a County

17   Supervisor on federally funded budget items.

18       Although plaintiff had not went to trial, Knapp stated that the District Attorney wins close

19   to 97% of all his cases and that plaintiff chances of winning were low. Plaintiff stated, "we have

20   not had a trial, I am not guilty and will never give up".

21       45. Plaintiff informed Knapp that he looked forward to trial where he can finally get his day

22   in court and the evidence before a jury. Plaintiff believes Knapp was not pleased with my response.

23   Many times Knapp would have documents in his hand, and invite plaintiff to come over and talk

24   about the criminal charges against plaintiff. In passing Knapp pointed to documents and said it

25   doesn't look good for you. Plaintiff stated, Knapp you are wrong.

26       46. One day Knapp stated that if plaintiff was convicted of a felony that he would lose his

27   pension. Plaintiff told Knapp that wasn't right and he was going to trial. Knapp knew the matter

28   was pending trial before the court and continue his harassment and reticule day after day until

1  plaintiff was removed from office.

2  47. May 28th, 2012 to September 20th, 2012 the criminal investigation of plaintiff focused

3  on the El Dorado Fire Safe Council's budget, and federal grants. The District Attorney's Office had

4  two investigators and a forensic auditor working with County Council Ed Knapp and Mike

5  Appelgarth investigating thousands of documents. After untold sums of money the El Dorado

6  County investigators found no evidence of wrong doing by plaintiff.

7  48. El Dorado County DA, spent over two year of ongoing investigation by the Civil Grand

8  Jury wherein plaintiff testified multiple times, and one time at the Criminal Grand Jury, El Dorado

9  County DA investigators, and various El Dorado County agencies claiming amongst other things

10  that plaintiff:

11      a) alleged receipt of federally funded Section 8 housing vouchers:
    b) interfering El Dorado Counties investigation of Big Cut Mine:

12      c) interfering El Dorado Counties investigation of Child protection agency:
    b) plaintiff had a conflict with El Dorado Fire Safe Council's budget:

13      e) receiving California Forest Improvement Plan (CFIP) grants for brush removal during
      his tenure as an El Dorado County Supervisor:

14      f) El Dorado County Code enforcement comes to ranch sited plaintiff for various violation:
    g) Assessor's Office send plaintiff a letter claiming plaintiff was not reporting business

15        equipment:
    h) Tax Collector send plaintiff a letter claiming he has no Business License:

16      g) Plaintiff believes the District Attorney call California Contractors Board complaining
      plaintiff needed contractors license. No contractors license is required for agricultural

17      activities.

18  **Trial on Criminal Grand Jury Indictment**

19  49. On April 23rd, 2013 El Dorado County Supervisor Ron Briggs, chaired in an illegal

20  close session to disused the Channel 13 local TV episode making plaintiff look like a criminal.

21  Plaintiff was in close session and told Chairman Supervisor Briggs, that the meeting was illegal and

22  plaintiff promptly left. The rest of the members of the Board of Supervisors soon left the room.

23  April 25th 2013 chairman Ron Briggs, on El Dorado County letter head sent a letter to the media as

24  the Chairman of the Board of Supervisors calling plaintiff's behavior wrong. Briggs signed it as

25  Chairman of the Board of Supervisors. Plaintiff inquired with his fellow Supervisor's and they stated

26  Briggs letter was not authorized.

27  50. About this same time El Dorado County Supervisor Jack Sweeney wrote a personal

28  letter to plaintiff asking him to resign. Plaintiff found the letter strange, and out of line.

51. After over two years of the El Dorado County DA relentless attacks, the DA's office finally convinced the Criminal Grand Jury to indicte plaintiff on four felony count. The criminal charges revolved around plaintiff's involvement with the 2007, California Forest Improvement Grant.

52. On or about May 28th, 2013 plaintiff learned that he had been indicted on four felonies and was given about two hours to arrange $55,000 bail and turn himself in at the El Dorado County Jail. A member of the El Dorado County Board of Supervisors, reached out to friends and relatives for funds to post cash bail.

53. Plaintiff knowing that the El Dorado DA, was conducting a "witch hunt" to remove him from office, requested the Fair Political Practice Commission, (FPPC) to conduct their own investigation. In June 2013, the FPPC commission completion their investigation finding:

**"the conflict of interest prohibition of the Act will not apply".**

Plaintiff was confident that the charges against him would be dismissed.

54. Shortly thereafter in June 2013, the El Dorado County DA's office seizing upon this opportunity to now **add seven misdemeanors from the Political Reform Act, (Cal. Gov. Code § 87460) alleging that the posting of bail was an undocumented personal loans & soliciting loans, from a county employees and contractor.**

55. On February 26, 2014, Deputy DA of El Dorado County stated in part:

Depending on what charges Ray Nutting is convicted of, if any, he could face a Government Code 3060 action — a civil Grand Jury convening to decide if Nutting should be removed from office.
Certain convictions, such as perjury, do not carry an automatic removal from office. For example, see the recent conviction of state Sen. Rod Wright, said prosecutor Jim Clinchard. Wright was convicted of felony perjury but remains in office, able to propose laws. Instead of a recall election, which could cost a large amount of taxpayer money, a 3060 action is another way to remove him from office, Clinchard said. The hope, he said, would be that a public official who was convicted in a criminal court would "step down, as it's the right thing to do." But, if they do not, a 3060 action can occur.

56. On May 14th, 2014, Plaintiff was acquitted on three felony counts and one misdemeanor; a mistrial was declared on the fourth felony count when the jury was unable to reach a verdict. Plaintiff was convicted of three misdemeanor, of the Political Reform Act violations of obtaining "personal loans" for bail from county employees or contractors (Govt. Code §87460 (a) and §87460

1  ( c), and three  misdemeanor of failure to document these "personal loans" for bail (Govt. Code

2  §87461).   Ironically plaintiff was convicted on the posting of bail for the felony's of which he was

3  originally charged and  acquitted.

4      57.   After the criminal trial, County Council Ed Knapp quickly found a lawyer specializing

5  in government code 1770 (h) and 1771. This lawyer came to El Dorado County and advised the Board

6  of Supervisors.   Both Knapp and the new lawyer were having exparte communication with the

7  Superior Court Judge prior to sentencing.

8      58. On May 19th, 2014 plaintiff's attorney David Wiener sent a letter to the El Dorado County

9  Supervisors office stating in part:

10  "This board does not have the right or authority to suspend Ray Nutting: the political sanctions for
    conviction of a misdemeanor under the Political Reform Act is as stated by the office of the District
11  Attorney  in the attached Mountain Democrat article; Government Code section 1770 (h) is not
    applicable to facts of this case; there has not been a determination complying with due process under
12  the criminal case, Government Code 3060 or other appropriate hearing of the predicate for application
    of Government Code section 1770(h). An action of suspension by the Board would violate individual
13  and property rights of Ray Nutting, and subject the Board and its individual members to liability."

14      59.   Plaintiff requested El Dorado County Council Knapp permit him to join in the hearing.

15  The Board of supervisors were holding a close session hearing. Plaintiff requested an official decision

16  of what constitutes a violation of official duties. Knapp denied plaintiff request to join in the hearing.

17  Plaintiff asked Knapp why he was doing this? Knapp replied the District Attorney Vern Pierson asked

18  him to.  Plaintiff was shocked.

19      60.   Plaintiff believed Knapp's job was to be council for the Board of Supervisors and not for

20  the prosecution.

21      61.   The Judge on June 6th, 2014, sentenced plaintiff for the May 14th, trial convictions, sent

22  a letter to the El Dorado County Board of Supervisor's stating "plaintiff office was vacated".   The

23  BOS's documents for a special election included a resolution from the BOS, stating plaintiff's office

24  has been vacated. Plaintiff stated his office was never vacated!  No hearing occurred.

25      62.   The Superior Court Judge, after the sentencing sent a letter to the BOS stating that the

26  office is "now vacant".  Plaintiff while driving to Fresno received a call from Human Resources

27  Director Pamela Knorr. She informed plaintiff that he needs to return his office keys immediately.

28   Plaintiff told Knorr that is not possible, to return the keys plaintiff was in Fresno, and that if she

1 wants the keys to call the Fresno Police Department. Knorr also informed plaintiff, according to
2 County Council Ed Knapp, the office was vacated and plaintiff was not allowed to return to his office.

3       63.  Knorr, informed plaintiff that he needed to clear out his office and have a county escort
4 present. Knorr further stated no documents would be removed without the escort reviewing them first.
5 Plaintiff informed Knorr that he was not vacating his office,  and would appeal the Superior Courts
6 decision.

7       64.  On or about June 17th, 2014 the El Dorado County Board of Supervisor  met in open
8 session to set a special election.  Without holding a hearing, notice, opportunity, or a judgment to
9 appeal from. The Resolution was passed by BOS, and in the resolution they stated plaintiff office had
10 been declared vacant by Judge Timothy Buckley, the Superior Court Judge of the criminal
11 proceedings.

12       65.  On June 6th, 2014, there was a meeting with County Council Ed Knapp, Human Resources
13 Pamela Knorr, Chief Administrative Officer Terri Daily, Sheriff John D'Agostini and perhaps others.
14 There was no direction as to what to do from the BOS.  Plaintiff believed that defendants believed the
15 letter from the Judge was a judicial order declaring the office of Ray Nutting was now vacant.
16 Defendant Knapp never directed the BOS any differently.

17       66.  Plaintiff believed that he never vacated his office and only physically cleared it out after
18 the special election was held Sept 9, 2014 out of respect for the voters.

19       67.  Plaintiff Appealed the Judge's letter about the vacancy to the Third Court of Appeals.
20 They denied review, and he appealed to the California Supreme Court.

21       68.  On or about August of 2014 The Attorney General Kamal D. Harris and his deputy David
22 Andrew Eldridge, responded and argued in part that:

23       **"The post-judgement letter's comment about vacancy, while true, had no legal effect"**

24       69.  At the Supreme Court the Attorney General argued, that plaintiff attorneys has the wrong
25 party, and there is no Judicial order to which an appeal my lie.

26       70.  August of 2014 Supreme Court summarily denies the Appeal.

27       71.  On Sept 9th, 2014 a Special Election is held and Shiva Frezen was elected.  Out of respect
28 to the voters, Plaintiff cleared out his office on Sept 10th, 2014. To date plaintiff still believes he is

1   the duly elected County Supervisor ousted from office, denied the enjoyment of his office without a

2   any due process.

3        72.  Frustrated, that plaintiff was not given due process or a remedy, plaintiff submitted his

4   claim against El Dorado County December 2014.   Plaintiff's claim was rejected in January or

5   February of 2015.

6        73.  Plaintiff alleges and re-alleges the facts stated in paragraphs 1 through 72 are

7   reincorporates herein as if fully reproduced herein by reference.

8                              **PARTIES**

9        74.  During all times mentioned in this Complaint, plaintiff Ray Nutting, a resident of El

10  Dorado County, California.   Plaintiff is a citizen of the United States of America and was the El

11  Dorado County District 2, Supervisor.

12       75.  Plaintiff is informed and believe, and thereon alleges that, at all times mentioned

13  herein defendants, County of El Dorado (hereinafter "COUNTY") is a unit of local government, duly

14  formed and authorized under the laws of the State of California. Plaintiff alleges upon information

15  and belief, that COUNTY, as part as its duties, regulates and provides supervision of all employees.

16  County is responsible for its ordinances, resolutions, customs and usage of regulations.

17    Plaintiff alleges the COUNTY is responsibility and obligated to provide due process to plaintiff and

18  it's citizens, and to supervise its employee's.  COUNTY is being sued as a person.

19       76.  Plaintiff is informed and believes and thus alleges, that defendant COUNTY is liable for

20  the damages to plaintiff, acting in concert, with the other defendants, under the color of state  law

21  ousting plaintiff, and denying him the enjoyment of his office, without due process.

22       77.  Plaintiff is informed and believe, and thereon alleges that, Defendant, Ron Mikulaco

23  (hereinafter "MIKULACO") was the El Dorado County Supervisor for District 1 for the County, a

24  public officer who is employed by the County of El Dorado.  Defendant  MIKULACO is enriched,

25  rewarded, and compensated while in his official capacity.   Plaintiff alleges that MIKULACO took

26  an oath before the County to uphold and defend the United States and State Constitutions and the

27  provisions stated therein.

28       78. Plaintiff is informed and  believe, and  thereon alleges that, Defendant MIKULACO, at

1  all times relevant, was a resident of El Dorado County, California, and is being sued in his official
2  capacity.   Plaintiff is informed and believes and thus alleges, that defendant MIKULACO is liable
3  for the damages to plaintiff, acting in concert, with the other defendants, under the color of state law,
4  in the unconstitutional ousting and denial of the enjoyment of plaintiff's office, without due process.

5      79.  Plaintiff is informed and believe, and thereon alleges that, Defendant, Brian Veerkamp
6  (hereinafter " VEERKAMP") was the El Dorado County Supervisor for District 3 for the County, a
7  public officer who is employed by the County of El Dorado. Plaintiff alleges that VEERKAMP took
8  an oath before the County to uphold and defend the United States and State Constitutions and the
9  provisions therein.

10     80.  Defendant VEERKAMP is enriched, rewarded, and compensated while in his official
11  capacity.  Defendant VEERKAMP was, at all relevant times, a resident of El Dorado County,
12  California, and is being sued  and in his official capacity.

13     81. Plaintiff is informed and believes and thus alleges, that defendant VEERKAMP is liable
14  for the damages to plaintiff, acting in concert, with the other defendants, under the color of state law,
15  in the unconstitutional ousting and denial of the enjoyment of plaintiff's office, without due process.

16     82.  Plaintiff is informed and believe, and thereon alleges that, Defendant, Ron Briggs
17  (hereinafter " BRIGGS") was the El Dorado County Supervisor for District 4 for the County, a public
18  officer who is employed by the County of El Dorado.  Plaintiff alleges that Briggs took an oath before
19  the County to uphold and defend the United States and State Constitutions the provisions therein.

20     83. Defendant BRIGGS is enriched, rewarded, and compensated while in his official capacity.
21   Defendant BRIGGS was, at all relevant times, a resident of El Dorado County, California, and is
22  being sued in his official capacity.  Plaintiff is informed and believes and thus alleges, that defendant
23  BRIGGS is liable for damages to plaintiff, acting in concert, with other defendants, under the  color
24  of state law, in the unconstitutional ousting and denial of the enjoyment of plaintiff's office, without
25  due process.

26     84.  Plaintiff is informed and believe, and thereon alleges that, Defendant, Norma Santiango
27  (hereinafter " SANTIANGO") was the El Dorado County Supervisor for District 5 for the County, a
28  public officer who is employed by the County of El Dorado.  Plaintiff alleges that SANTIANGO took

1   an oath before the County to uphold and defend the United States and State Constitutions and the
2   provision therein.

3        85. Defendant SANTIANGO is enriched, rewarded, and compensated while in her official
4   capacity.  Defendant SANTIANGO was, at all relevant times, a resident of El Dorado County,
5   California, and is being sued in her official capacity.  Plaintiff is informed and believes and thus
6   alleges, that defendant SANTIANGO is liable for the damages to plaintiff, acting in concert, with the
7   other defendants, under the color  of state  law in the unconstitutional ousting and denial of the
8   enjoyment of plaintiff's office, without due process.

9        86. Plaintiff is informed  and  believe,  and  thereon  alleges that, Defendant, Ed Knapp
10  (hereinafter " KNAPP") was the El Dorado County Council for the County, a public officer who is
11  employed by the County of El Dorado.  Plaintiff alleges that Knapp, took an oath before the County
12  to uphold and defend the United States and State Constitutions and the provision stated therein.

13       87. Defendant KNAPP is enriched, rewarded, and compensated while in his official capacity.
14  Defendant KNAPP was, at all times, a resident of El Dorado County, California, and is being sued in
15  his official capacity.  Plaintiff is informed and believes and thus alleges, that defendant KNAPP is
16  liable for the damages to plaintiff, acting in concert, with the other defendants, under the color of state
17  law, in the unconstitutional ousting and denial of the enjoyment of plaintiff's office, without due
18  process.

19       88. Plaintiff is informed  and  believe,  and  thereon  allege, that Defendant Pamela Knorr
20  (hereinafter " KNORR") was at all relevant times stated in this complaint, a public officer, employed
21  by the County of El Dorado.  Plaintiff alleges that defendant KNORR, was enriched, rewarded, and
22  compensated for her official duties while in her official capacity.   Plaintiff alleges that defendant
23  KNORR  was, at all relevant times, a resident of El Dorado County, California, and acting in her
24  official capacity as the El Dorado County Human Resources Department Head for the County.

25       89. Plaintiff is informed  and  believe,  and  thereon  alleges that, Defendant, PAMELA
26  KNORR, took an oath before the County to uphold and defend the United States and State
27  Constitutions and the  provisions stated therein.

28       90.  Defendant KNORR is being sued in her official capacity.  Plaintiff is informed and

1  believes and thus alleges, that defendant KNORR, is liable for the damages to plaintiff, acting in
2  concert, with the other defendants, under the color of state law, in the unconstitutional ousting and
3  denial of the enjoyment of plaintiff's office, without due process.

4      91.  Plaintiff does not know the true names and capacities of defendants sued herein as
5  DOES 1 through 25, inclusive, whether individual, corporate, associate, partner, or otherwise,
6  and, therefore, sue these defendants by such fictitious names.  Plaintiff is informed and
7  believe, and thereon allege, that each of these fictitiously named defendants has harmed
8  Plaintiff through their varied and intentional Constitutional violations, deprivations, as
9  unequal, outrageous and vindictive treatment of Plaintiff and/or otherwise caused damage to
10  Plaintiff as hereinafter described.  Plaintiff will seek leave to amend this complaint to set forth
11  the true names and capacities of such defendants when such information is ascertained.

12      92.  Plaintiff is informed and believes and thus alleges, that defendant DOES is liable for the
13  damages to plaintiff, acting in concert, with the other defendants, under the color of state law, in
14  the unconstitutional ousting and denial of the enjoyment of plaintiff's office, without due process.

15      93.  Plaintiff is informed and believe, and thereon alleges that, Defendants, and each of
16  them were acting under the color of their authority of their office, department, agency, employment,
17  and in concert, with each other, outside the scope of their official duty, in the unconstitutional ousting
18  and denial of the enjoyment of plaintiff's office, without due process

19                      **GENERAL ALLEGATION**
20                      **AGAINST DEFENDANTS**

21      94.  Plaintiff alleges and re-alleges the facts stated in paragraphs 1 through 93 are
22  reincorporates herein as if fully reproduced herein by reference.

23      95.  Plaintiff alleges on May 19th, 2014 he requested defendant Ed Knapp to permit him to
24  join in the hearing Knapp refused.

25      96.  Plaintiff alleges on May 19th, 2014 the Board of supervisors were holding exparte close
26  session hearing.

27      97.  Plaintiff alleges on May 19th, 2014, that he requested an official decision of what
28  constitutes a violation of official duties and was denied.

1    98.  Plaintiff alleges on May 19th, 2014, he asked defendant Knapp why he was doing this?
2    Knapp replied the District Attorney Vern Pierson asked him to.  Plaintiff was shocked.

3    **EVENTS AFTER JUNE 6th, 2014**

4    99. Plaintiff is informed and believe, and thus alleges, that the Judge of the Superior Court,
5    sent a letter to the El Dorado County Board of Supervisor's stating "plaintiff office was now vacated"
6    on June 6th, 2014.

7    100.  Plaintiff is informed and believe, and thus alleges, the removal or "vacation" of office
8    was never before any court, for a determination.

9    102.  Plaintiff is informed and believe, and thus alleges that defendants and each of them on
10   June 17th, 2014, voted on a resolution stating plaintiff's office has been vacated.

11   103. Plaintiff is informed and believe, and thus alleges that on June 17th, 2014 defendants and
12   each of them held a special election for a new El Dorado County Supervisor to take plaintiff's seat.

13   104.  Plaintiff alleges he never vacated his office!  No hearing occurred.

14   105.  Plaintiff is informed and believe, and thus alleges that while driving to Fresno received
15   a call from Human Resources Director, defendant Pamela Knorr.  She informed plaintiff that he need
16   to return his office keys immediately.

17   106.  Plaintiff alleges defendant Knorr, informed plaintiff, according to County Council Ed
18   Knapp, plaintiff's office was vacated and plaintiff was not allowed to return to his office.

19   107.  Plaintiff alleges that defendant Knorr, requested his key to his office.

20   108.  Plaintiff alleges that defendant Knorr, informed plaintiff that he needed to clear out his
21   office and a county escort would need to be present when he returned to his office

22   109.  Plaintiff alleges he informed defendant Knorr that he was not vacating his office.

23   110.  Plaintiff is informed and believe, and thus alleges that defendants and each of them on
24   June 6th, 2014, held a meeting with defendant County Council Ed Knapp, Human Resource Pamela
25   Knorr, Chief Administrative Officer Terri Daily, Sheriff John D'Agostini and others to remove plaintiff
26   from office.

27   111.  Plaintiff alleges that defendants believed the letter from the Judge was a judicial order
28   declaring the office of plaintiff Ray Nutting was now vacant.

COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

112. Plaintiff alleges and re-alleges the facts stated in paragraphs 1 through 111 are reincorporates herein as if fully reproduced herein by reference.

## COUNT ONE

### (42 U.S.C. § 1983 - Violations of the Right to Due Process)

113. Plaintiff herein reallege each and every allegation as contained above and hereby incorporate them by this reference as if fully set forth herein

114. The Fifth and Fourteenth Amendments of the United States Constitution guarantee to citizens of this United States, like plaintiff Ray Nutting here, freedom from the deprivation of life, liberty and property without due process of law (i.e., notice and an opportunity to be heard in meaningful manner and at a meaningful time).

115. The Constitutional right to due process exists both pre- and post-deprivation.

116. Defendants, and each of them, violated Plaintiffs' due process rights as alleged hereinabove when they failed to give plaintiff any notice and opportunity of hearing, before ousting or vacating his office.

117. These due process requirements imposed on defendants and each of them by the United States Constitution was not new to the defendants. The defendants and each of them swore to uphold and defend the United States Constitution, which requires a hearing to be set before the court and give plaintiff: (1) "notice," and (2) an "opportunity to be heard at a meaningful time and in a meaningful manner, before any rights can be abridged or action taken, such as ousting plaintiff from office. This fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

118. At the time Defendants and each of them undertook all of the above-referenced conduct to oust and remove plaintiff from his office, the law was well-settled to the effect of Constitutional due process requirements. It is well-settled that before plaintiff's rights to his office could be taken or abridged, some form of deprivation notices to Plaintiff and an opportunity to be heard at a meaningful time was required prior to plaintiff ousting as the El Dorado County Supervisor.

119. Plaintiff is informed and believes, and thereon allege, that Defendants, and each of

COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

1  them, undertook their actions and statements and otherwise acted cruelly, willfully, in bad faith and

2  in conscious disregard for Plaintiff's rights, with the intent to vex, harass, annoy and cause injury

3  and unjust hardship to Plaintiff, and that said acts were done with malice, fraud and oppression

4  directed toward Plaintiff. As a result, Plaintiff is entitled to an award of exemplary damages against

5  Defendants, and each of them, according to proof at the time of trial.

6       120.   As a direct and proximate result of the above-stated intentional acts of Defendants,

7  and each of them, Plaintiff has been, and will continue to be, deprived of their Constitutional due

8  process rights and have therefore been damaged in an amount in excess of this Court's diversity

9  jurisdictional threshold in the manner herein alleged.

10      121. **WHEREFORE** Plaintiffs pray for judgment against Defendants, and each of them,

11  jointly and severally, as hereinafter set forth.

12      122.  Plaintiff alleges and re-alleges the facts stated in paragraphs 1 through 121 are

13  reincorporates herein as if fully reproduced herein by reference.

14                                    **COUNT TWO**

15                    **(42 U.S.C. § 1983 – Taking of a Liberty, without a hearing)**

16      123.   Plaintiff herein realleges each and every allegation as contained above and hereby

17  incorporate them by this reference as if fully set forth herein.

18      124.  The Fifth and Fourteenth Amendments of the United States Constitution guarantee to

19  citizens of the United States, like plaintiff Ray Nutting here, protections from the taking of their

20  rights without a hearing, such as plaintiff liberty interest to hold office. This liberty interest and

21  property right to serve is well recognized in our Federal and State law.

22      125.  These unenumerated right to serve and hold office lodged with the United States

23  Constitution can not be abrogated or abridged by a letter from a Judge, or by an exparte hearing,

24  motion or resolution, by the defendants acting as the El Dorado County Board of Supervisors.

25  These arbitrary and capricious actions by defendants and each of them show the complete disregard

26  for the Constitution and plaintiff's rights

27      126.  The Fifth and Fourteenth Amendments of the United States Constitution, protections

28  act as a safeguard from the arbitrary denial of life, liberty, or property by government outside

1   sanction of law.

2        127.  Although both State and Federal law require a  hearing (1) notice, and (2) an

3   opportunity to be heard at a meaningful time and in a meaningful manner, before any rights can be

4   abridged or action taken, defendants and each of them acted arbitrarily and capriciously when they

5   chose to ignore the well established laws, and the Constitutions.   Defendants action of holding

6   exparte hearing wherein defendants voted on the vacation of plaintiff's office should shock the

7   conscience of this Court.  Defendants actions holding these exparte hearings, without due process,

8   clearly violate both the Fifth and Fourteenth Amendments.

9        128.  At the time defendants undertook all of the above-referenced conduct, the law was

10  well-settled to the effect, that any abrogation of plaintiff's liberty, and his property interest without

11  first providing plaintiff Ray Nutting due process was a clear violation of the Constitution.

12       129.  Plaintiff is informed and believes, and thereon allege, that Defendants, and each of

13  them, undertook their actions and statements and otherwise acted cruelly, willfully, in bad faith and

14  in conscious disregard for Plaintiff's rights with the intent to vex, harass, annoy and cause injury

15  and unjust hardship to Plaintiff and that said acts were done with malice, fraud and oppression

16  directed toward Plaintiff. As a result.

17       130.  As a direct and proximate result of the above-stated intentional acts of Defendants,

18  and each of them, Plaintiff has and will continue to be, deprived of his liberty and property interest

19  and right to serve and hold office as the El Dorado County Supervisor.   As the result of defendants

20  and each of them violating due process, plaintiff has therefore been damaged in an amount in

21  excess of this Court's diversity jurisdictional threshold in the manner herein alleged.

22       131.  **WHEREFORE** Plaintiffs pray for judgment against Defendants, and each of them,

23  jointly and severally, as hereinafter set forth.

24       132. Plaintiff alleges and re-alleges the facts stated in paragraphs 1 through 131 are

25  reincorporates herein as if fully reproduced herein by reference.

26                              **COUNT THREE**

27       **(42 U.S.C. § 1983 - Violations of the Right to Equal Protection Under the Law)**

28       132. Plaintiffs herein reallege each and every allegation as contained above and hereby

1  incorporate them by this reference as if fully set forth herein.

2      133. The Fourteenth Amendment of the United States Constitution guarantees to citizens
3  of the United States, equal protection of the laws.

4      134. The actions, inactions and statements of defendants, and each of them as set forth
5  above, clearly demonstrate a continuous and orchestrated pattern of unequal treatment and
6  discrimination against Plaintiff by defendants.  Defendants and each of them acting under the
7  color of state law, thereby violated Plaintiff's rights to equal protection under the Fourteenth
8  Amendment to the Constitution of the United States.

9      135. At the time Defendants undertook all of the above-referenced conduct, the law was
10  well-settled to the effect that the Constitutional afforded equal protection to plaintiff.  Defendants
11  and each of them deliberately denied plaintiff equal protection of law simply because they
12  disagreed with his political views.

13      136. Defendants and each of them punished plaintiff for his political views by, ousting him
14  from office without due process leaving him with no other remedy at law to exhaust.  Defendants
15  and all of their discriminative actions, in concert, to remove plaintiff because defendants did not
16  agree with plaintiff's political views. Leading defendants to an all out attack to remove plaintiff at
17  all cost. Even at the blatant disregard of plaintiff's right of due process, deliberately violating the
18  very Constitution defendants swore to uphold.  Defendants outrageous violation of the Constitution
19  for this purposes of harassment and injury and for no rational or reasonable purpose except to
20  embarrass plaintiff before his constituents in an attempt to force him to resign.

21      137. Plaintiffs are informed and believe, and based thereon allege, that Defendants, and
22  each of them, undertook their actions and statements and otherwise acted cruelly, willfully, in bad
23  faith and in conscious disregard for Plaintiff's rights with the intent to vex, harass, annoy and cause
24  injury and unjust hardship to Plaintiff and that said acts were done with malice, fraud and
25  oppression directed toward Plaintiff. As a result, Plaintiff are entitled to an award of exemplary
26  damages against Defendants, and each of them, according to proof at the time of trial.

27      138. As a direct and proximate result of the above-stated intentional acts of Defendants,
28  and each of them, Plaintiff has been, and will continue to be, deprived of his Constitutional right to

1  due process and has therefore been damaged in an amount in excess of this Court's diversity

2  jurisdictional threshold in the manner herein alleged.

3      139.  Plaintiff alleges and re-alleges the facts stated in paragraphs 1 through 138 are

4  reincorporates herein as if fully reproduced herein by reference.

5      **WHEREFORE,**

6      Plaintiff pray for judgment against Defendants, and each of them, jointly and severally, as

7  hereinafter set forth.

8      **PRAYER FOR RELIEF**

9      a.    Punitive damages according to proof:  against each defendant jointly and severally,

10  In the amount of $100,000.000

11      b.    Award punitive damages in an appropriate amount, but not less than $100,000 each

12  against defendants and Does 1-25 and each of them, individually, and in their official capacity.

13      c.    For attorneys' fees and costs according to proof; and

14      d.    For the right to amend this complaint as needed; and

15      e.    For such other and further relief as the Court deems just and proper:

16      f.    Trial by jury is demanded herein as provided by Amendment Seven of the United States

17  Constitution and by Rule 38, Federal Rules of Civil Procedure.

18

19      Date: _June 6th, 2016_

20      Respectfully Submitted

21

22  _____

23  Kay Nutting plaintiff  In *Proper Persona*

24

25

26

27

28